**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY OF OHIO, | )<br>)<br>) |
| Plaintiff, | )<br>)   Case No.  1:15-cv-475<br>) |
| v. | )<br>) |
| TEXTRON, INC., | )   **JURY TRIAL DEMANDED**<br>) |
| Defendant. | )<br>)<br>) |

**FIREMAN'S FUND INSURANCE COMPANY OF OHIO'S**
**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff Fireman's Fund Insurance Company of Ohio ("FFIC"), through its counsel White and Williams LLP, submits this Complaint against Textron, Inc. ("Textron") stating as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of determining an actual controversy between the parties, construing the rights and legal obligations arising under a policy of insurance issued by FFIC to Textron and related issues. FFIC seeks a declaration that it owes no duty to defend or indemnify Textron under such insurance policy in connection with certain alleged environmental liabilities and remediation costs at Textron's formerly-owned TORX facility in Rochester, Indiana ("the Site").

**THE PARTIES**

2. FFIC is an insurance company organized and existing under the laws of the State of Ohio, with its principal place of business located in Novato, California.

3. Defendant Textron is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Providence, Rhode Island.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as FFIC seeks a declaration of its rights and duties under the insurance policy at issue and related issues. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to the claim herein occurred within this District.

## THE FFIC POLICY

6. FFIC issued to Textron Supercover Umbrella and Excess Liability Policy No. CSR 216-34-43 (the "FFIC Policy") for the period of January 1, 1997 to January 1, 2000, but cancelled effective January 1, 1998 pursuant to a Notice of Cancellation. A true and correct copy of the FFIC Policy as provided by Textron to FFIC in or about April 2015 is attached hereto as Exhibit 1.

7. The named insured on the FFIC Policy is Textron Inc. with an address of 40 Westminster Street, Providence, Rhode Island 02903.

## THE SITE

8. The Site is located at or near 4366 North Old U.S. 31 in Rochester, Indiana.

9. Textron operated an industrial fastener plant (the "TORX facility") at the Site from 1954 to 2006, at which time Textron sold the facility to Acument Global Technologies.

10. From approximately 1952 to 1992, Textron discharged process wastewater and non-contact cooling water into a pond ("the Western Pond") located to the west of the TORX facility.

11. During its ownership and operation of the Site, Textron also allegedly discharged various quantities of lubricating oils, cutting oils, quench oils, water soluble oils, and metal particles into the Western Pond at the Site.

12. As a result of its activities at the Site, Textron discharged trichloroethylene ("TCE") and its breakdown chemicals, dichloroethene ("cis-1,2-DCE") and vinyl chloride ("VC") and other chlorinated solvents (collectively the "Contaminants"), into the surface and subsurface of the Site, including the groundwater.

## REGULATORY PROCEEDINGS AGAINST TEXTRON

13. In or before the mid-1980s, groundwater contamination was identified at the Site.

14. On or before June 14, 1986, Indiana's State Board of Health asserted a claim against Textron regarding Textron's wastewater system at or near the TORX facility.

15. Sampling of wastewater at or near the TORX facility in 1986 revealed high concentrations of heavy metals (cadmium, chromium, copper, and lead) and volatile organic chemicals ("VOCs").

16. Textron continued soil and groundwater sampling near the Site in 1986 and 1987 and submitted the results to the Indiana Department of Environmental Management ("IDEM") on April 4, 1988.

17. According to a 1988 Preliminary Site Inspection Report, the TORX facility discharged approximately 125,000 gallons of contaminated wastewater per day into the Western Pond on the Site.

18. Additionally, representatives from Textron's TORX facility met with IDEM on April 8, 1988 to discuss instituting a residential well sampling program.

19. Between 1987 and 1989, fifteen monitoring wells were installed at the Site. Between 1993 and 2006, groundwater samples were collected from at least 12 of the 15 monitoring wells on an annual basis.

20. Since at least 1993, TCE, cis-1, 2-DCE, and VC have been detected in several monitoring wells at or near the Site.

21. Between November 1989 and November 1992, Textron excavated a total of 19,525 tons of sludge and soil from the Western Pond on the Site. The sludge and soil material was dewatered, stabilized, and transported offsite for proper disposal.

22. As of January 1992, Textron discontinued use of the Western Pond and began discharging wastewater to an onsite water treatment system at or near the TORX facility.

23. Between 1986 and 2008, samples were collected from the process wastewater, the Western pond (surface water and sediment), 15 on-site monitoring wells, on-site production wells, nearby private drinking water wells, soils near Textron's former degreaser pit and Western Pond, seven off-site monitoring wells, soil gas downgradient of monitoring wells, and an eastern pond on the Site.

24. On November 19, 2008, IDEM issued a Special Notice of Liability letter to Textron. In the letter, IDEM asserted that Textron was liable under Indiana Code § 13-25-4 and § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") for contamination at and emanating from the Site. IDEM directed Textron to reimburse IDEM for investigation and sampling costs and to undertake certain activities to clean up the Site.

25. On January 13, 2009, the EPA issued a General Notice of Potential Liability letter to Textron. In the letter, the EPA asserted that Textron was liable under CERCLA for contamination at the Site, and directed Textron to clean up the Site.

## PRIVATE ACTIONS AGAINST TEXTRON

26. In March 2010, four lawsuits were filed in Fulton County Circuit Court, Indiana, against Textron for damages relating to the contaminated groundwater. The lawsuits were removed to the U.S. District Court for the Northern District of Indiana and filed under the following captions: (1) *C.W., et al. v. Textron, Inc.*, Case No. 3:10-cv-00087 (the "Wood Lawsuit"); (2) *Stephen Horban, et al. v. Textron, Inc.*, Case No. 3:10-cv-00088 (the "*Horban* Lawsuit"); (3) *Lance Nelson, et al. v. Textron, Inc.*, Case No. 3:10-cv-00097 (the "*Nelson* Lawsuit"); and (4) *Russell W. Miller, Inc. v. Textron, Inc.,* Case No. 3:10-cv-00096 (the "*Miller* Lawsuit") (collectively, the "Private Actions").

27. The plaintiffs in the Private Actions generally alleged that they suffered property damage and/or personal injuries because Textron allowed, caused, or contributed to the release of the Contaminants, which contaminated groundwater near the Site.

28. The plaintiffs further alleged that Textron had knowledge of the contamination at the Site and possible off-Site migration by at least 1986.

## PRIOR LITIGATION INVOLVING THE SITE

29. On August 14, 1987, Textron filed a Complaint for Declaratory Judgment in the Superior Court of Rhode Island, captioned *Textron, Inc. v. Aetna Casualty and Surety Co., et al*., Case No. 87-3497, naming FFIC and various other insurance companies as defendants (the "Prior Litigation"). A true and correct copy of Textron's Complaint from the Prior Litigation is attached hereto as Exhibit 2.

16191776v.1

30. In the Complaint filed in the Prior Litigation, Textron sought defense and indemnity from FFIC and other insurance companies in connection with numerous environmental liability claims that had been asserted against Textron.

31. Exhibit B to Textron's Complaint in the Prior Litigation identified claims for which Textron sought coverage from the insurer defendants in the Prior Litigation.[1]

32. Exhibit B to Textron's Complaint in the Prior Litigation identified Textron's TORX facility in Rochester, Indiana.

33. Specifically, Exhibit B to Textron's Complaint in the Prior Litigation listed the following "claim" for which Textron sought coverage from FFIC:

> C. <u>Torx Products – Rochester, IN</u>
>
> Study of wastewater pond located on property underway. Groundwater monitoring wells to be installed shortly. Approximately $70,000 spent to date. Camcar has retained a law firm to represent it in this matter.

34. The Prior Litigation was resolved and based on such resolution, FFIC's obligations, if any, to Textron have been resolved and released to the extent set forth in an agreement between the parties (the "Agreement"). A copy of the Agreement is in the possession of Textron.

35. FFIC believes disclosure of the Agreement is permitted to enforce the Agreement: however, out of an abundance of caution, FFIC is providing separate notice to Textron that FFIC will seek to use and disclose the Agreement in this lawsuit to enforce the Agreement. In such separate notice, FFIC is advising Textron that if Textron does not seek to limit disclosure that FFIC will file an Amended Complaint attaching the Agreement.

---

[1] Textron later filed several amended complaints in the Prior Litigation adding additional claims/sites.

16191776v.1

**NOTICE TO FFIC**

36. On November 12, 2008, Textron issued a letter to FFIC advising that area residents had indicated verbally to Textron that they were seeking compensation from Textron for damages in connection with groundwater contamination at the Site.

37. In 2009, Textron notified FFIC of the two letters referenced above in paragraphs 24 and 25 from the IDEM and the EPA.

38. By letter dated September 28, 2009, Textron provided FFIC with a copy of a proposed Administrative Settlement Agreement and Order on Consent for Removal to be executed between Textron and the EPA. Textron's letter clarified that it was focusing its efforts on securing insurance coverage from its primary carriers, before moving on to excess policies, such as the FFIC Policy.

39. By letter dated August 14, 2013, Textron notified FFIC of Textron's position that Textron had exhausted the limits of underlying coverage and requested coverage from FFIC for certain property damage and/or bodily injury claims asserted by the IDEM, the EPA and private parties (collectively, the "Underlying Matters").

40. On January 23, 2014, FFIC issued a letter to Textron reserving its rights and requesting additional information regarding the Underlying Matters.

41. Thereafter, on June 9, 2015, FFIC issued a letter to Textron again requesting information concerning the Underlying Matters.

42. On June 23, 2015, Textron issued a letter responding to FFIC's June 9, 2015 correspondence. Therein, Textron enclosed invoices purporting to establish that Textron had incurred approximately $5.18 million in connection with the investigation and remediation of contamination at the Site.

## COUNT I

## DECLARATORY RELIEF – THE POLLUTION EXCLUSION

43. FFIC re-alleges the allegations set forth in paragraphs 1 through 42 of its Complaint as though fully set forth herein.

44. The FFIC Policy, by endorsement, contains the following pollution exclusion:

POLLUTION EXCLUSION

THIS POLICY IS AMENDED IN THAT IT SHALL NOT APPLY TO ANY CLAIM OR CLAIMS FOR PERSONAL INJURIES OR PROPERTY DAMAGE RELATING TO THE ACTUAL, ALLEGED OR THREATENED DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OF POLLUTANTS.

THE WORD "POLLUTANTS", WHEREVER USED IN THIS EXCLUSION, MEANS ANY SOLID, LIQUID, GASEOUS OR THERMAL IRRITANT OR CONTAMINANT, INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE.  WASTE INCLUDES MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED.

HOWEVER, IN EXCESS OF THE UNDERLYING AMOUNT STATED IN THE SCHEDULE OF THIS ENDORSEMENT, THIS EXCLUSION SHALL NOT APPLY TO ANY SUCH DISCHARGE, DISPERSAL, RELEASE, OR ESCAPE THAT RESULTS FROM:

1. VIOLENT BREAKING OPEN OR EXPLOSION OF ANY PLANT, EQUIPMENT OR BUILDING FOR WHICH THE NAMED INSURED HAS LEGAL RESPONSIBILITY, EITHER AS OWNER OR OPERATOR;

2. FIRE, LIGHTENING OR WINDSTORM DAMAGE TO ANY PLANT, EQUIPMENT OR BUILDING FOR WHICH THE NAMED INSURED HAS LEGAL RESPONSIBILITY, EITHER AS OWNER OR OPERATOR;

3. COLLISION, OVERTURNING OR UPSET OF ANY AUTOMOBILE OR RAILROAD VEHICLE;

4. THE PRODUCTS LIABILITY HAZARD OR THE COMPLETED OPERATIONS LIABILITY HAZARD OTHER THAN IN RESPECT OF ANY CLAIM OR CLAIMS FOR PERSONAL INJURIES OR PROPERTY DAMAGE RELATING TO THE ACTUAL, ALLEGED OR THREATENED DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OF POLLUTANTS ONTO, INTO OR BENEATH (A) ANY BODY OF WATER WHETHER ABOVE OR BELOW GROUND LEVEL, OR (B) ANY LAND EXCEPT WITH REGARD TO CLAIMS RELATING TO THE PROPERTY TO WHICH THE INSURED'S PRODUCTS WERE DIRECTLY AND INTENTIONALLY APPLIED;

5. UNINTENDED FIRE, LIGHTNING OR EXPLOSION NOT OTHERWISE SPECIFIED UNDER 1, 2, 3, OR 4 ABOVE.

NOTWITHSTANDING THE FOREGOING THIS POLICY IS FURTHER AMENDED IN THAT IT SHALL NOT APPLY TO ANY CLAIMS RELATING TO:

A) ANY LIABILITY TO TEST FOR, MONITOR , CLEAN-UP, REMOVE, CONTAIN, TREAT, DETOXIFY OR NEUTRALIZE POLLUTANTS, WHETHER OR NOT ANY OF THE FOREGOING ARE OR SHOULD BE PERFORMED BY THE INSURED OR BY OTHERS;

B) ANY LIABILITY OF THE INSURED FOR THE ACTUAL, ALLEGED OR THREATENED DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OR POLLUTANTS CAUSED BY ANY OF THE INSURED'S PRODUCTS THAT HAVE BEEN DISCHARGED, DUMPED, ABANDONED, OR THROWN AWAY BY OTHERS;

THE COMPANY SHALL ONLY BE LIABLE IN EXCESS OF THE UNDERLYING AMOUNT STATED IN THIS ENDORSEMENT.

IT BEING UNDERSTOOD AND AGREED BY THE INSURED THAT THE UNDERLYING AMOUNTS SHALL ONLY COMPRISE THE PAYMENT OF ACTUAL DAMAGES WHICH WOULD, EXCEPT FOR THE AMOUNT THEREOF, BE INSURED BY THIS ENDORSEMENT AND THAT THE NAMED INSURED SHALL IN ADDITION THERETO BEAR ALL LEGAL COSTS AND EXPENSES INCURRED UP UNTIL SUCH TIME AS THE UNDERLYING AMOUNT IS EXHAUSTED.

16191776v.1

> THE COMPANY AGREES THAT THE INSURED MAY OBTAIN INSURANCE IN RESPECT OF ALL OR ANY PART OF THE UNDERLYING AMOUNT AND THE LEGAL COSTS AND EXPENSES IN ADDITION THERETO BUT THIS ENDORSEMENT SHALL NOT IN ANY WAY BE CONSTRUED TO BE SUBJECT TO THE TERMS, DEFINITIONS, CONDITIONS AND LIMITATIONS OF SUCH INSURANCE NOR SHALL THE COMPANY CONTRIBUTE WITH SUCH INSURANCE IN THE EVENT THAT SUCH INSURANCE COVERS PERSONAL INJURIES, PROPERTY DAMAGE ALSO COVERED BY THIS ENDORSEMENT.
>
> THE DECLARATIONS, INSURING AGREEMENTS, DEFINITIONS, EXCLUSIONS AND CONDITIONS OF THIS POLICY OTHERWISE REMAIN UNCHANGED.
>
> SCHEDULE OF UNDERLYING AMOUNT
>
> $3,000,000 EACH OCCURRENCE WITHOUT AGGREGATE.
>
> \* \* \*

45. Coverage to Textron for environmental liabilities at the Site is barred based on the foregoing pollution exclusion contained in the FFIC Policy.

46. FFIC seeks a judicial determination that it does not have and never had any obligation to defend, reimburse defense costs, or indemnify Textron under the FFIC Policy with respect to Textron's alleged liabilities in connection with the Site.

## COUNT II

## DECLARATORY RELIEF – KNOWN LOSS/LACK OF FORTUITY

47. FFIC re-alleges the allegations set forth in paragraphs 1 through 46 of its Complaint as though fully set forth herein.

48. Coverage is barred under the FFIC Policy to the extent liability for which Textron seeks coverage from FFIC was known to Textron, in whole or in part, prior to the inception of FFIC Policy period.

49. Coverage is barred under the FFIC Policy to the extent that the conduct giving rise to the alleged claims or liability was expected or intended and/or was otherwise not fortuitous.

50. Textron had knowledge of contamination at the Site and possible or actual offsite migration by at least 1986, more than 10 years before the FFIC Policy incepted.

51. Prior to the inception of the FFIC Policy, Textron was aware of liability resulting from contamination at the Site.

52. Since at least 1988, Textron has worked under the supervision of IDEM to clean up and excavate the Site and to conduct both onsite and offsite sampling and monitoring.

53. FFIC seeks a judicial determination that it does not have and never had any obligation to defend, reimburse defense costs, or indemnify Textron under the FFIC Policy with respect to Textron's known and/or non-fortuitous liabilities in connection with the Site.

## COUNT III

## DECLARATORY RELIEF – OWNED PROPERTY EXCLUSION

54. FFIC re-alleges the allegations set forth in paragraphs 1 through 53 of its Complaint as though fully set forth herein.

55. The FFIC Policy, by endorsement, contains the following exclusion:

IT IS AGREED THAT THIS INSURANCE DOES NOT APPLY TO ANY LIABILITY FOR DAMAGES TO OR DESTRUCTION OF REAL AND/OR PERSONAL PROPERTY, INCLUDING THE LOSS OF USE THEREOF

1. OWNED OR OCCUPIED BY, LEASED BY, OR RENTED TO ANY INSURED,

2. USED BY ANY INSURED, OR

3. IN THE CARE, CUSTODY OR CONTROL OF ANY INSURED, OR AS TO WHICH ANY INSURED IS FOR ANY PURPOSE EXERCISING PHYSICAL CONTROL.

IT IS FURTHER AGREED THAT THIS POLICY WILL NOT BECOME EXCESS OF ANY REDUCED OR EXHAUSTED UNDERLYING AGGREGATE LIMIT OF LIABILITY OR AGGREGATE SELF-INSURED RETENTION TO THE EXTENT SUCH REDUCTION OR EXHAUSTION IS THE RESULT OF CLAIMS, DAMAGE OR LOSS EXCLUDED BY THIS ENDORSEMENT.

56. Coverage to Textron for environmental liabilities at the Site is barred, at least in part, based on the foregoing exclusion contained in the FFIC Policy.

57. FFIC seeks a judicial determination, pursuant to this exclusion, that it does not have and never had any obligation to defend, reimburse defense costs, or indemnify Textron under the FFIC Policy with respect to Textron's alleged liabilities in connection with the Site.

## COUNT IV

## DECLARATORY RELIEF – EXHAUSTION OF UNDERLYING INSURANCE

58. FFIC re-alleges the allegations set forth in paragraphs 1 through 57 of its Complaint as though fully set forth herein.

59. Subject to its other terms, conditions, and exclusions, the FFIC Policy shall respond only after the limits of the underlying insurance as stated in the FFIC Policy's Schedule of Underlying Insurance and any other underlying insurance collectible by Textron have been fully and properly exhausted.

60. Upon information and belief, Textron purchased certain policies of insurance that provided primary coverage for the period from at least 1956 to 2008.

61. Textron has failed to establish that all such underlying insurance has been fully and properly exhausted.

62. FFIC seeks a judicial determination that it does not have and never had any obligation to defend, reimburse defense costs, or indemnify Textron under the FFIC Policy unless and until the limits of all underlying insurance have been exhausted.

## COUNT V

## DECLARATORY RELIEF – OTHER COVERAGE ISSUES

63. FFIC re-alleges the allegations set forth in paragraphs 1 through 62 of its Complaint as though fully set forth herein.

64. The FFIC Policy may also bar coverage for Textron based on one or more of the following grounds:

   a. Coverage is barred to the extent there has not been an "accident" or "occurrence" under the terms of the FFIC Policy;

   b. Coverage is barred to the extent there has not been any injury that constitutes "property damage" or "bodily injury" as defined in the FFIC Policy;

   c. Coverage is barred to the extent that any "property damage" or "bodily injury" for which coverage is sought occurred prior to the inception of or after the expiration of the policy period of the FFIC Policy;

   d. Coverage is barred to the extent that coverage is sought for equitable or injunctive relief;

   e. Coverage is barred to the extent that any claimed loss is, or results from, the imposition of civil or other fines, penalties, or punitive damages;

   f. Coverage is barred to the extent Textron failed to mitigate, minimize or avoid any "bodily injury" or "property damage" and/or a failed to mitigate, minimize or avoid liabilities;

g. Coverage is barred to the extent coverage is sought for reimbursement of expenditures, liabilities and obligations that do not constitute "damages," including, without limitation, remedial costs, clean-up costs or other costs associated with complying with federal, state, or local rules regulations, ordinances or law;

h. Coverage is barred to the extent Textron misrepresented, failed to disclose, or omitted material facts regarding its acts, practices or other material information in connection with its application for insurance under the FFIC Policy;

i. Coverage is barred to the extent Textron breached any policy conditions requiring Textron to cooperate with FFIC or prohibiting voluntary payments or the voluntary assumption of obligations;

j. Coverage is barred to the extent Textron breached any policy conditions requiring timely and/or proper notice to FFIC of any claim(s) or suit(s);

k. Coverage is barred and/or limited due to the existence of other insurance available to Textron;

l. Coverage is barred and/or limited by virtue of the per occurrence limits and/or the aggregate limits applicable to the FFIC Policy;

m. Coverage for defense or reimbursement of defense costs is barred to the extent that there has not been a "suit" against an insured under the FFIC Policy;

n. Coverage is not available under the FFIC Policy for any costs, expenses or payments made in connection with any claim before that claim was tendered to FFIC;

16191776v.1

    o. To the extent that the FFIC Policy is found to provide coverage to Textron, then FFIC's coverage obligations would be limited to FFIC's appropriate share of allocated liability; and

    p. Coverage may be barred in whole or in part by the other terms, exclusions, conditions and limitations contained in the FFIC Policy.

65. FFIC seeks a judicial determination that coverage to Textron under the FFIC Policy is limited or barred pursuant to the foregoing policy provisions with respect to Textron's alleged liabilities in connection with the Site.

## COUNT VI

## DECLARATORY RELIEF – AGREEMENT

66. FFIC re-alleges the allegations set forth in paragraphs 1 through 65 of its Complaint as though fully set forth herein.

67. The Agreement constitutes a valid and enforceable contract between FFIC and Textron.

68. FFIC seeks a judicial determination that, pursuant to the Agreement referenced above at paragraphs 34-35, FFIC is released from any obligation to defend, reimburse defense costs, or indemnify Textron under the FFIC Policy with respect to Textron's alleged liabilities in connection with the Site, to the extent resolve and released by the Agreement.

## COUNT VII

## BREACH OF CONTRACT

69. FFIC re-alleges the allegations set forth in paragraphs 1 through 68 of its Complaint as though fully set forth herein.

70. Textron breached the Agreement referenced in paragraphs 34-35 above.

71. Textron's breach of the Agreement has proximately caused FFIC to suffer damages, including but not limited to incurring costs and expenses to evaluate Textron's coverage claim and prosecute this declaratory judgment action.

## COUNT VIII

## REFORMATION OF CONTRACT

72. FFIC re-alleges the allegations set forth in paragraphs 1 through 71 of its Complaint as though fully set forth herein.

73. In the alternative, and without prejudice to the causes of action set forth above, FFIC pleads as follows.

74. FFIC and Textron entered into the Agreement and, by mutual mistake and with unintentional omissions, the Agreement failed in a material respect to correctly reflect the mutual understanding of the contracting parties.

75. As a result of the parties' mutual mistake, the Agreement must be reformed in order to honor the parties' justified expectations.

## PRAYER FOR RELIEF

WHEREFORE, FFIC seeks an Order from this Court awarding the following relief:

A. Determining, adjudicating and declaring the rights, status and obligations of FFIC and Textron under the FFIC Policy with respect to Textron's alleged liabilities in connection with the Site;

B. Declaring that FFIC has no obligation to defend, reimburse defense costs or indemnify Textron under the FFIC Policy with respect to Textron's alleged liabilities in connection with the Site;

C. Awarding damages, together with interest, costs and attorney's fees in an amount to be established by the evidence, arising out of Textron's breach of contract;

D. Reforming the Agreement based upon the mutual mistake of FFIC and Textron;

E. For FFIC's reasonable attorneys' fees, costs, and disbursements from this action, to the extent allowed by law; and

  F. Awarding FFIC such other further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

FFIC hereby demands a trial by jury for all issues so triable.

DATE:  November 9, 2015    Respectfully submitted,

**FIREMAN'S FUND INSURANCE COMPANY OF OHIO**

By: /s/ Katherine Wills
Michael Kraemer (#6751)
kraemerm@whiteandwilliams.com
Katherine Wills (#7830)
willsk@whiteandwilliams.com
WHITE AND WILLIAMS LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
Ph:  (617) 748-5223
Fax:  (617) 748-5243